**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE | ) | |
| COMPANY, as subrogee of SEM Minerals, Inc., | ) | |
| | ) | Case No.: 23-cv-01988 |
| Plaintiff, | ) | |
| | ) | Hon. Rebecca R. Pallmeyer |
| v. | ) | Magistrate Judge Maria Valdez |
| | ) | |
| USG CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO USG CORPORATION'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

NOW COMES Plaintiff NATIONWIDE AGRIBUSINESS INSURANCE COMPANY

as subrogee of SEM Minerals, Inc., by and through its counsel, Cozen O'Connor, and for its

Opposition to Defendant USG Corporation's Motion to Dismiss the Amended Complaint, states:

# TABLE OF CONTENTS

**Page**

I.   LEGAL STANDARD.................................................................................................5

II.  THE ALLEGATIONS AS TO NATIONWIDE'S CAUSES OF ACTION .......................6

III. ARGUMENT.......................................................................................................10

    A.  Plaintiff's Negligence Claim is Viable Due to a Recognized Exception to the Economic Loss Doctrine..............................................................10

    B.  SEM Minerals Never Agreed to Waive or Restrict Any of Its Legal Remedies ...11

    C.  The First Amended Complaint Does Not Allege Only Conclusory Facts.............13

    D.  USG's Motion Should Be Converted To A Motion for Summary Judgment........15

IV.  CONCLUSION....................................................................................................15

LEGAL\64004332\1

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                            **Page**

*ABCO Metals Corp. v. J.W. Imports Co., Inc.*, 560 F.Supp. 125 (N.D.Ill. 1982) ........................11

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) .......................................5, 6

*Bd. of Education v, A, C and S, Inc.*, 131 Ill.2d 428 (1989) ...........................................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007).......................................5, 6

*Bell Fuels, Inc. v. Lockheed Electronics Co., Inc.*, 130 Ill.App.3d 940, 474 N.E.2d 1312

(1st Dist. 1985) ..........................................................................................7, 13

*Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F.Supp. 911 (N.D.Ill. 1985) ..........11

*Brandt v. Boston Scientific Corp.*, 204 Ill.2d 640, 792 N.E.2d 296 (2003)....................................7

*Chiriboga v. National R.R. Passenger Corp.*, 687 F.Supp.2d 764 (N.D.Ill. 2009) ......................6

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000)...........................................5

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957) ......................................................5

*Damnjanovic v. United States Dept. of Air Force*, 135 F.Supp.3d 601 (E.D. Mich. 2015) ...........5

*East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858,
106 S.Ct. 2295 (1986)....................................................................................11

*Fullreide v. Midstates Beverage Co., Inc.*, 70 Ill.App.3d 758 (5th Dist. 1979).............................15

*Gideon Service Div. v. Dunham-Bush, Inc.*, 80 Ill.App.3d 633, 400 N.E.2d 89 (1980)...............13

*Gouge v. Central Illinois Public Service*, 144 Ill.2d 535, 582 N.E.2d 108(1991).........................6

*Midland Supply Co., Inc. v. Ehret Plumbing and Heating Co.*, 108 Ill.App.3d 1120,
440 N.E.2d 153 (1982)....................................................................................13

*Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443 (1982) ...............................10

*Simpkins v. CSX Transp, Inc.*, 2012 IL 110662, 965 N.E.2d 1092 (IL Sup. Ct. 2012) ..................6

*Vaughn v. General Motors Corp.*, 118 Ill.App.3d 201 (3rd Dist. 1983) ........................................10

*Vaughn v. General Motors Corp.*, 102 Ill.2d 431, 466 N.E.2d 195 (1984)...................................11

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012)...................................................10

*Wolff v. Bethany North Suburban Group*, 2021 IL App (1st) 191858, 197 N.E.2d 77 ...................7

**Rules and Statutes**

810 ILCS 5/2-314 .......................................................................................................................7

FRCP 8(a)(2).............................................................................................................................5

FRCP 12(d) ...........................................................................................................................6,15

LEGAL\64004332\1

## I.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to 'give the defendant fair notice of what the . . .claim is and the grounds upon which it rests.'" (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007), quoting from *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)) Generally, motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. (*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Damnjanovic v. United States Dept. of Air Force*, 135 F.Supp.3d 601, 605 (E.D. Mich. 2015)) A motion to dismiss under FRCP 12(b)(6) is appropriate only if the plaintiff has not provided fair notice of its claim and factual allegations that – when accepted as true – are plausible and rise above mere speculation. (*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009); *Twombly*, supra, 555-56.) A FRCP 12(b)(6) motion admits facts alleged in the Complaint but challenges the plaintiff's right to any relief based on those facts. The issue is not whether the plaintiff will ultimately prevail but whether the Complaint contains enough factual material to raise a right to relief above the speculative level.

A Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, but a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do; factual allegations must be enough to raise a right to relief above the speculative level. (*Ibid*.) "Asking for plausible grounds [to support a cause of action] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation

that discovery will reveal evidence of [the cause of action]." (*Twombly*, supra, at 556, 1965.)[1] A motion to dismiss for failure to state a claim cannot be used to resolve factual issues or the merits of the case.

Generally, the motion must be decided solely on the allegations in the plaintiff's Complaint. The defendant should not attach affidavits, evidence, or other extrinsic materials to the motion. (FRCP 12(d)). Under most circumstances, if the court considers extrinsic evidence, the FRCP 12(b)(6) motion must be converted into a FRCP 56 Motion for Summary Judgment.

## II.     THE ALLEGATIONS AS TO NATIONWIDE'S CAUSES OF ACTION

The *Twombly* and *Iqbal* Court made it clear that consideration of a Rule 12(b)(6) motion begins with an analysis of the elements of the asserted causes of action. (See, *e.g.*, *Iqbal*, at 675.)

The elements of a negligence claim in Illinois are (1) the existence of a duty of care, (2) breach of that duty, (3) injury to the plaintiff or the plaintiff's property; and (4) proximate causation of the injury by the defendant's breach. (*Gouge v. Central Illinois Public Service*, 144 Ill.2d 535, 582 N.E.2d 108, 111 (1991); *Chiriboga v. National R.R. Passenger Corp*., 687 F.Supp.2d 764, 768 (N.D.Ill. 2009)) Whether a duty exists in a particular case is a question of law for the court to decide. (*Simpkins v. CSX Transp, Inc*., 2012 IL 110662, 965 N.E.2d 1092, 1096 (IL Sup. Ct. 2012))

Plaintiff's Amended Complaint alleges USG's duty to use reasonable care and caution as a producer and seller of feed-grade calcium sulphate (par. 30), that USG breached that duty through the actions and omissions of its employees, agents, servants and/or representatives in one or more of four stated particulars (par. 31(a-d)), damage to Royal Canin's property in the form of unusable, contaminated raw material and unsaleable pet food product containing foreign

---

[1] "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. (*Twombly*, supra, at 570, 1974)

LEGAL\64004332\1

material which was inedible and undigestible (pars. 18 and 32), and that the damage to Royal Canin's property was the direct and proximate result of one or more of USG's negligent acts or omissions (par. 32).

The essential elements of a breach of contract claim are (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting injury to the plaintiff or its property. (*Wolff v. Bethany North Suburban Group*, 2021 IL App (1st) 191858, 197 N.E.2d 77, 91) In its Amended Complaint, Nationwide pled SEM's issuance of Purchase Order L139357 to USG for 50,000 pounds of "Bulk Calcium Sulphate F-Grade 18% Coarse" (par. 7), USG's written acknowledgement of the order and scheduling of a delivery date (par. 8), USG's issuance of a Bill of Lading 000008266484 for 22.34 tons of the ordered calcium sulphate (par. 11), the formation of a contract between USG and SEM for the calcium sulphate (par. 39), SEM's performance of all obligations on its part to be performed under the contract (par. 40), USG's breach of the contract (par. 41), and resulting damages (par. 42).

Section 2-314 of the Uniform Commercial Code creates an implied warranty of merchantability in every contract for the sale of goods where the seller is a merchant regularly engaged in the sale of goods of that kind, unless the warranty is excluded or modified. (*Bell Fuels, Inc. v. Lockheed Electronics Co., Inc*., 130 Ill.App.3d 940, 943, 474 N.E.2d 1312 (1st. Dist. 1985)) To succeed on a claim of breach of implied warranty of merchantability, a plaintiff must allege and prove (1) a sale of goods, (2) by a merchant of those goods, and (3) the goods were not of merchantable quality. (*Brandt v. Boston Scientific Corp*., 204 Ill.2d 640, 792 N.E.2d 296 (2003); 810 ILCS 5/2-314) Goods are not merchantable if they are not fit for the ordinary purposes for which goods of that description are sold. (*Bell Fuels,* supra*, at* 943.)

7

Nationwide's Amended Complaint pleads a sale of goods by USG to SEM in connection with SEM's issuance of Purchase Order L139357 to USG for 50,000 pounds of "Bulk Calcium Sulphate F-Grade 18% Coarse" (par. 7), USG's written acknowledgement of the order and scheduling of a delivery date (par. 8), USG's issuance of a Bill of Lading 000008266484 for 22.34 tons of the ordered calcium sulphate (par. 11), and the formation of a contract between USG and SEM for the calcium sulphate (par. 39). It further pleads that USG was a supplier of calcium sulphate to SEM (par. 6), that USG was aware that calcium sulphate was a common ingredient in pet food well before March 25, 2022 (par. 28), that USG had issued a Safety Data Sheet for "Calcium Sulphate Feed Grade" in which USG describes the recommended use for the product as "Animal Feed" (par. 28), a history of dealings with, communications with, and sales to SEM of calcium sulphate (par. 34), USG's implied warranty of merchantability (par. 35), USG's breach of the implied warranty of merchantability in that the calcium sulphate was contaminated with inedible and undigestible PET plastic material which did not meet SEM's stated specification of "Bulk Calcium Sulfate F-Grade 18% Coarse" (par. 36), damage to Royal Canin's property in the form of unusable, contaminated raw material and unsaleable pet food product containing foreign material which was inedible and undigestible (pars. 18 and 32), and that the damage to Royal Canin's property was the direct and proximate result of one or more of USG's negligent acts or omissions (par. 32).

Rather than simply plead the elements of its causes of action (*e.g*., plaintiff entered into a contract with USG, the goods were not merchantable, USG breached the contract, the breach/negligence resulted in property damages), Nationwide pled specific facts: SEM's issuance of a Purchase Order, the P.O. number, the date the P.O. was issued, the specific material, quantity and specification of the material, USG's written Acceptance of the P.O., the scheduling of delivery,

USG's issuance of a Bill of Lading, the Bill of Lading's number and issuance date, the quantity of the material delivered with the Bill of Lading, the nature of the breach by USG (*i.e.*, contamination with foreign material), independent laboratory analysis of the specific type of foreign material in the product, the handling of the calcium sulphate by others after it left USG's plant, the pressure cleaning of the trailer before pick-up from USG, USG's verification that the trailer was clean upon arrival, Royal Canin's use of the calcium sulphate and discovery of the foreign material, that the foreign material made the calcium sulphate unmerchantable because the PET was inedible and undigestible, etc. Also, filed with the Amended Complaint were the subject Purchase Order, USG Acknowledgement, USG's Bill of Lading, USG's certification as to the cleanliness of the pick-up trailer, the pressure washer's certification of the pressure washing, and USG's Safety Data Sheet for the calcium sulphate.

As verification of the facts alleged by Nationwide are the additional facts that: the contamination of the calcium sulphate was documented, investigated and acknowledged by Royal Canin, SEM Minerals, and Nationwide; the fact and quantum of damages was witnessed and calculated by Royal Canin, SEM, and Nationwide; and they combined to lead to SEM's payment of Royal Canin's damages and Nationwide's reimbursement to SEM of those damages (apart from the policy deductible). The actual payments by SEM and Nationwide render Nationwide's allegations entirely non-speculative. USG's protestations that it has not received fair notice of the claims against it and the grounds upon which they rest is simply unbelievable in context of the foregoing especially in light of the pre-litigation notice it received of the contamination and the investigation it performed in response to that notice.[2]

---

[2] USG had also filed a FRCP 12(b)(6) Motion to Dismiss in response to Nationwide's original Complaint. In that Motion, USG largely criticized the Complaint for not referencing pre-suit notice to it (even though USG was well aware it had received notice and notice was not in issue). In reply, Nationwide filed its Amended Complaint adding allegations that on August 22, 2022 Nationwide adjuster Daniel DeCristofaro had emailed notice of a claim to USG

### III.    ARGUMENT

USG makes three primary arguments: (1) The Negligence Claim is Barred by the Economic Loss Doctrine, (2) SEM Waived or Disclaimed All Three Of Its Asserted Causes of Action, and (3) Plaintiff's Amended Complaint is Entirely Speculative and Rests on a Single Allegation. Each argument will be addressed in the order presented.

### A.  Plaintiff's Negligence Claim is Viable Due to a Recognized Exception to the Economic Loss Doctrine

USG's first argument is that Plaintiff's negligence action is barred by the economic loss doctrine as pronounced in *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 435 N.E.2d 443 (1982). In so doing, USG appears to mistakenly equate monetary damages with "economic loss." (*Vaughn v. General Motors Corp.*, 118 Ill.App.3d 201 (3rd Dist. 1983): "A correct interpretation of *Moorman* shows that 'economic loss' as used in that opinion does not mean simply monetary damages.") As noted in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), "it is routine for tort plaintiffs who have incurred non-economic losses (such as physical injury) to seek and receive monetary damages." (*Wigod*, supra, at 568) Therefore, a plaintiff's request for money damages does not equate to a "solely economic loss."

Nor is this a case involving mere disappointed expectations as to product quality. Plaintiff is not complaining that the product was only 16% Coarse calcium sulphate instead of the ordered 18%, but it was still usable. Rather, the product was unusable due to the PTE contamination even though it likely met the 18% Coarse specification.

---

(par. 25), that Keith Mizwicki of SEM had previously provided USG with notice of the contaminated calcium sulphate (par. 25), that USG's Susan M. McGee acknowledged receipt of Mr. DeCristofaro's notice on August 26, 2022 (par. 26), and that USG's Assistant General Counsel – Litigation Brad A. Nerad issued on September 16, 20222 a written denial of Nationwide's claim in which he acknowledged that "On May 31, 2022, **USG received notice** that Royal Canin had discovered plastic material in the calcium sulphate that it received from SEM." (emphasis supplied) (par. 28). Copies of the referenced documents were produced by Nationwide as Exhibits to the Amended Complaint.

Furthermore, as there was damage to other property, besides the calcium sulphate, and foreseeable harm to any animal attempting to eat the contaminated pet feed, as a result of USG's production of a contaminated product, a well-recognized exception to the economic loss doctrine applies. Because the calcium sulphate was contaminated with inedible plastic material without any notice of the contamination, it was blended by Royal Canin with other ingredients to manufacture pet food. Once the contamination was identified, the blended pet food product containing calcium sulphate, PET plastic material, and the other blended ingredients had to be discarded as it was inedible, undigestible, and unsaleable.

This matter is analogous to the circumstances in *Blommer Chocolate Co. v. Bongards Creameries, Inc.*, 635 F.Supp. 911 (N.D.Il. 1985), in which chocolate products were contaminated by whey containing salmonella. The *Blommer* Court relied upon *ABCO Metals Corp. v. J.W. Imports Co., Inc.*, 560 F.Supp. 125 (N.D.Il. 1982) and *Vaughn v. General Motors Corp.*, 102 Ill.2d 431, 466 N.E.2d 195 (1984) in holding that at least part of Blommer's loss may have stemmed from a "sudden and calamitous occurrence" caused by contaminated whey and that Blommer could maintain a tort action against the whey producer. And, the Supreme Court of Illinois clearly stated in *Bd. of Education v, A, C and S, Inc.*, 131 Ill.2d 428, 449 (1989), citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870, 106 S.Ct. 2295, 2303 (1986) that "it is not critical to a strict products liability [*i.e.*, tort] action that a sudden and calamitous event occurred."

**B. SEM Minerals Never Agreed to Waive or Restrict Any of Its Legal Remedies**

USG attached to its Motion to Dismiss a copy of printed "USG Terms & Conditions" (hereafter "USG Terms"). In its Memorandum of Law (hereafter "Memo"), USG self-servingly and unsupportedly refers to the USG Terms as "The Agreement" (Memo, at 10) and "the

11

agreement between the parties." (Memo, at 9, 10, and 11.) The USG Terms purport to govern the sale of products by United States Gypsum Company, USG Interiors, USG Ceilings Plus, USG International, and/or their affiliate or subsidiary companies. The purchaser is only referred to generically as "Customer". There is nothing in the USG Terms that link them to SEM Minerals, Purchase Order L139357, Bill of Lading 000008266484 or the contaminated calcium sulphate. There is ambiguity as to whether what USG attached to its Memo is what was referred to in fine print at the bottom of other USG documents. Had USG linked them up, there would then be questions as to whether the reference to "USG's terms and conditions of sale" were conspicuous enough and as to whether USG's failure to provide them to SEM prevents USG from relying on them.

USG's issued Bill of Lading and its Order Acknowledgement make scant reference to "USG's terms and conditions of sale." The Order Acknowledgement does so in a Disclaimer in fine print at the bottom of the single-page document. The Bill of Lading does so in fine print boilerplate printed at the bottom of the first page. Note that the Bill of Lading was signed by the "Receiver" on 3/25/22 which is the date the calcium sulphate was received by the trucking company for transport to SEM in Quincy, Illinois.

USG is requesting that the Court apply the USG Terms without having introduced evidence that the USG Terms were ever part of a Contractual Agreement between SEM and USG and without establishing that the USG Terms were ever even provided by USG to SEM. They were not attached to USG's Order Acknowledgement or Bill of Lading and the Disclaimer at the bottom of the Order Acknowledgement indicates that, at best, USG's Terms may only have been made available had SEM searched for them on USG's website. That is insufficient to constitute a "meeting of the minds" between SEM and USG. Had it been part of the transaction, as stated in

*Bell Fuels, Inc. v. Lockheed Electronics Co., Inc*., 130 Ill.App.3d 940 (1ˢᵗ Dist. 1985): "It is true that a disclaimer of implied warranties which is delivered with the goods is insufficient." (*Id*. at 947, citing *Midland Supply Co., Inc. v. Ehret Plumbing and Heating Co*., 108 Ill.App.3d 1120, 1125, 440 N.E.2d 153 (1982) and *Gideon Service Div. v. Dunham-Bush, Inc*., 80 Ill.App.3d 633, 637, 400 N.E.2d 89 (1980))

### C.  The Amended Complaint Does Not Allege Only Conclusory Facts

USG asserts that the Amended Complaint is speculative and alleges only conclusory facts. (Motion, par. 5) In its Memorandum of Law in support, USG argues that Nationwide's claims are based on a single allegation (citing par. 17 of the Amended Complaint). (Memorandum, at pp. 12, 14, and 16) USG's counsel reads the Amended Complaint far too narrowly. As mentioned in section II. above, the Amended Complaint's allegations include: SEM's issuance of a Purchase Order, the P.O. number, the date the P.O. was issued, the specific material, quantity and specification of the material,  USG's written Acceptance of the P.O., the scheduling of delivery, USG's issuance of  a Bill of Lading, the Bill of Lading's number and issuance date, the quantity of the material delivered with the Bill of Lading, the nature of the breach by USG (contamination with foreign material), independent laboratory analysis of the specific type of foreign material in the product, the handling of the calcium sulphate by others after it left USG's plant, the pressure cleaning of the trailer before pick-up from USG, USG's certification that the trailer was clean upon arrival, Royal Canin's use of the calcium sulphate and discovery of the foreign material, that the foreign material made the calcium sulphate unmerchantable because the PET was inedible and undigestible, etc. Also, filed with the Amended Complaint were the subject Purchase Order, USG Acknowledgement, USG's Bill of Lading, USG's verification as to the cleanliness of the pick-up

13

trailer, the pressure washer's certification of the pressure washing, and USG's Safety Data Sheet for the calcium sulphate.

As verification of the facts alleged by Nationwide are the additional facts that: the contamination of the calcium sulphate was documented, investigated and acknowledged by Royal Canin, SEM Minerals, and Nationwide; the fact and quantum of damages was witnessed and calculated by Royal Canin, SEM, and Nationwide; and they combined to lead to SEM's payment of Royal Canin's damages and Nationwide's reimbursement to SEM of those damages (apart from the policy deductible). These are documented and verifiable facts, rather than speculative conclusions. That three distinct corporate entities can verify these facts and two of them made significant payments based on these facts is compelling evidence.

The fact that testing by an independent laboratory detected PET foreign material in the USG calcium sulphate at Royal Canin, together with the additional undisputed and documented facts that (1) USG was the source of the calcium sulphate, (2) trucking company Autumn Trucking took delivery of the calcium sulphate from USG in Detroit and (3) delivered it to SEM's Quincy, Illinois facility, that Autumn Trucking's trailer 51304 was pressure cleaned by independent company Pressure Cleaning, Inc. between the trailer's last delivery and the pickup from USG, (4) USG issued written verification that trailer 51304 had been cleaned prior to arriving at USG, (5) SEM repackaged the calcium sulphate[3] and had it delivered to Royal Canin's processing facility in Guelph, Ontario, Canada, (6) after blending some of the calcium sulphate with other ingredients, Royal Canin discovered foreign material in it. The reasonable inference which follows from these facts is that if there is no opportunity for the foreign material to get introduced into the calcium

---

[3] The Amended Complaint states that SEM blended the calcium sulphate for homogeneity (par. 12). Plaintiff's counsel has since confirmed that information was incorrect. SEM merely repackages the bulk calcium sulphate into shipping containers suitable for transport to customers.

sulphate between the time it left USG's facility and the time the foreign material was found in the calcium sulphate, it must have been introduced at USG or before USG received the calcium sulphate from a supplier. As observed by the Court in *Fullreide v. Midstates Beverage Co., Inc.*, 70 Ill.App.3d 758, 762 (5th Dist. 1979): "Evidence of reasonable and proper handling of a product between the time it left the possession and control of the defendant manufacturer or seller and the time of the occurrence of the injury is an indication that the defect alleged to have existed at the time of the injury did not come into being in that interim, but existed prior thereto."

### D. **USG's Motion Should Be Converted To A Motion for Summary Judgment**

Since there is no evidence that the USG Terms were part of the agreement between USG and SEM, USG's attachment of that document to its Motion To Dismiss requires, unless the Court rejects that document, that the Motion be converted to a FRCP 56 Motion for Summary Judgment per FRCP 12(d). Should this Court convert the Motion to a FRCP 56 Motion for Summary Judgment, plaintiff requests thirty days following conversion in which to file an Opposition to Summary Judgment supported by documentation not permitted in response to a FRCP 12(b)(6) Motion to Dismiss.

### IV. **CONCLUSION**

For the reasons set forth above, USG's Motion should be DENIED in all respects. In the alternative only, should the Court find any part of the Amended Complaint deficient, plaintiff requests leave to file a Second Amended Complaint.[4]

---

[4] Where pleadings are determined to be deficient, leave to amend is liberally granted. Plaintiff has properly pled its claims and any purported deficiencies are of a technical nature and capable of correction. Should the Court determine that the Amended Complaint is deficient in any manner, Plaintiff respectfully requests that it be permitted leave to cure any deficiencies that the Court identifies.

LEGAL\64004332\1

Dated:  August 15, 2023    Respectfully submitted,

           NATIONWIDE AGRIBUSINESS INSURANCE
           COMPANY as subrogee of SEM Minerals, Inc.

       By:  /s/Kevin P. Caraher
           Kevin P. Caraher (IL Bar #6180111)
           COZEN O'CONNOR
           123 N. Wacker Drive, Suite 1800
           Chicago, Illinois 60610
           Phone: 312-382-3100
           Fax: 312-382-3180
           kcaraher@cozen.com

16

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the forgoing Opposition was served upon all counsel of record listed below via the ECF filing system on this 15th day of August, 2023.

/s/Kevin P. Caraher

Christopher J. Esbrook
Kasun Wijegunawardana
Esbrook P.C.
321 N. Clark St., Suite 1930
Chicago, IL 60654
Christopher.esbrook@esbrook.com
Kasun.wije@esbrook.com

17

LEGAL\64004332\1